In the Matter of: DAVID B. ULLMAN and Cheryl A. Ullman, dba Midas Muffler, Springfield, Ohio, Debtor.

James R. WARREN, Trustee, Plaintiff,

v.

The HUNTINGTON NATIONAL BANK, Defendant.

Bankruptcy No. 3–86–02571.
Adv. No. 3–87–0043.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 8, 1987.

James R. Warren, trustee, plaintiff.

Barry P. Reich, Springfield, Ohio, for defendant.

## DECISION GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, TRUSTEE, JAMES R. WARREN

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences and (O)—other proceedings effecting the liquidation of the assets of the estate or the adjustment of the debtor/creditor ... relationship.... The matter is before the court upon Plaintiff's Motion For Summary Judgment (Doc. 12) and accompanying Brief (Doc. 13), and the Memorandum Of Defendant, The Huntington National Bank, In Support Of Motion For Summary Judgment (Doc. 14).

### FACTS

The plaintiff's complaint (Doc. 1) alleges that, "On or about July 14, 1986, July 23, 1986, and August 29, 1986, on or within 90 days before the date of the filing of the Petition, to-wit: October 1, 1986, property of the Debtor was transferred to Defendant, at which times there were transferred

to the said Defendant the sum of $4,331.03." Of the $4,331.03 originally sought by the plaintiff, the plaintiff and the defendant have determined by stipulation that the "[A]mount in question is $990.07, of which $37.42 is not disputed by Defendant as being a preference." (Doc. 16) The transfer in question is evidenced by check number 4440 in the amount of $952.65 and is attached to the stipulations as Exhibit A (Doc. 11).

A further explanation of the transfer is found attached to Doc. 11 as Exhibit F, the Payment Transaction of David B. Ullman. According to this document, on July 14, 1986, $750.39 was applied to interest and a late fee on notes numbered 07927100 and 07927101 and $202.26 was applied to interest and a late fee on notes numbered 07949600 and 07949601. The total of these two transfers is $952.65, the amount in controversy.

### ISSUE

The plaintiff and the defendant agree that all of the elements of 11 U.S.C. § 547(b) have been stipulated, or are clearly apparent from the court file and pleadings, and the only issue remaining for the court's decision is whether the transfer made on July 14, 1986, in the amount of $952.65, is exempted from the preference provisions of 11 U.S.C. § 547(b) by virtue of the ordinary course of business exclusion of 11 U.S.C. § 547(c)(2) (Doc. 13 and Doc. 14).

### DECISION

■ The concept underlying the preference provision of the Bankruptcy Code is the furtherance of the congressional policy of recapturing certain prefiling transfers so that the primary aim of bankruptcy legislation—an equitable distribution to an estate's creditors—can occur. *Matter of Foreman Industries, Inc.*, 59 B.R. 145, 155 (Bankr.S.D. Ohio 1986). Accordingly, while 11 U.S.C. § 547 must be read as a whole, including a recognition of the most recent amendments to § 547(c)(2) (Bankruptcy Amendments And Federal Judgeship Act of 1984, Public Law 98–353), it is also nec-

essary to recognize that the burden of establishing the exception rests with the party claiming the exception. 11 U.S.C. § 547(g).

Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee; and

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

In order to fall within this exception to the avoiding power of the trustee, the creditor/defendant must establish by a preponderance of the evidence that the transaction in question was "[W]ithin the ordinary course of business of *both* the debtor and the transferee and made according to ordinary business terms." (emphasis in original) *In re Southern Indus. Banking Corp.*, 72 B.R. 512, 515 (Bankr.E.D.Tenn. 1987).

According to the legislative history of § 547(c)(2), this defense was intended to "[P]rotect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee. H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 373–374 (1977), U.S. Code Cong. and Admin. News 1978, pp. 5787, 6329, 6330." *Matter of Van Huffel Tube Corp.*, 74 B.R. 579, 588 (Bankr.N.D.Ohio 1987). "The intent was to insulate ordinary trade credit transactions that are kept current. Thus, payments made to employees, suppliers, and others for operating expenses or trade credit transactions were intended to be exempt from recovery (citation omitted)" *Southern Indus.* at 515. Section 547(c)(2) "[S]hould protect those payments which do not result from 'unusual' debt collection or payment practices. To the extent an otherwise 'normal' payment occurs in response to such practices, it is without the scope of

§ 547(c)(2)." *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir.1986).

" 'Ordinary' contemplates, at least in part, that which is ordinary as between the respective parties." (citation omitted) *Southern Indus.* at 515. Absent a stated definition in the Bankruptcy Code, Section 547(c)(2) requires that an 'ordinary' transfer be viewed two (2) ways:

Application of § 547(c)(2) requires the court to examine a subject transaction from two distinct prespectives. The term "ordinary course of business" may be viewed as one which attempts to express the relation between the debtor and a creditor as though that relation were in a vacuum. Stated another way, the court need determine that which is "ordinary" as between the debtor and a creditor from a purely subjective view-point. *See* 11 U.S.C. § 547(c)(2)(A) and (B). The court is further required to view the subject transaction from an objective viewpoint: whether the subject transfer was made according to common industry practice. 11 U.S.C. § 547(c)(2)(C). 'To be subjectively 'ordinary' as between the parties implies some consistency with other business transactions between the debtor and the creditor.' (citation omitted). To be objectively 'ordinary' implies that the subject transfer did not deviate from the industry norm. *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bankr.W.D.Okl.1986).

The decisions of other bankruptcy courts provide additional guidance in determining "the ordinary course of business or financial affairs of the debtor and the transferee". Courts have found the following facts and circumstances as indications that the transfer was not ordinary: untimely payments, *Craig Oil, Van Huffel;* payments made in an unusual form, *Craig Oil, In re Production Steel, Inc.* 54 B.R. 417 (Bankr.M.D.Tenn.1985); *In re Vunovich*, 74 B.R. 629 (Bankr.D.Kan.1987); *In re Day Telecommunications, Inc.*, 70 B.R. 904 (Bankr.E.D.N.C.1987); payments made in an unusual amount, *Vunovich;* and payments made for transactions that are unusual as between the parties, *Southern Indus., In re Western World Funding, Inc.*, 54 B.R. 470 (Bankr.D.Nev.1985).

Accordingly, in applying § 547(c)(2) this court shall consider the prior course of dealing between the parties and the amount, timing, and circumstances surrounding the particular payment(s). *In re Day Telecommunications, Inc.*, 70 B.R. 904, 910 (Bankr.E.D.N.C.1987). The prior course of dealing between the parties and the amount, timing and circumstances surrounding the payment are evidenced by the stipulations of the parties, (Exhibit F, Doc. 11). This document lists the payment transactions of the debtor. According to the payment schedule of notes 07927100 and 07927101, from November 13, 1984 until July 14, 1986, 19 out of 20 payments were standard monthly payments. The remaining payment was in the amount of $750.39, and was applied as a late fee and interest for June, 1986. According to the payment schedule of notes 07949600 and 07949601, from August 19, 1985 until July 14, 1986, 10 out of 11 payments were standard monthly payments. The remaining payment was in the amount of $202.26, and was applied as a late fee and interest for May, 1986.

In this matter, the transfer of July 14, 1986 did not result from "usual" payment practices of the debtor (*Craig Oil*), the payment was in an unusual amount, (*Vunovich*), and was untimely. (*Van Huffel*). Accordingly, the defendant has not met the burden of establishing the exception claimed pursuant to 11 U.S.C. § 547(c)(2). 11 U.S.C. § 547(g).

### PREJUDGMENT INTEREST

As this court has held (*Matter of Foreman*, 59 B.R. 145, 154–57 (Bankr.S.D.Ohio, 1986)), prejudgment interest at the rate established by 28 U.S.C. § 1961(a) will be permitted from the date the complaint was filed until payment is made to the trustee. *Accord In re Missionary Baptist Foundation of America*, 69 B.R. 536 (Bankr.N.D.Tex.1987), *In re H.P. King Co., Inc.*, 64 B.R. 487 (Bankr.E.D.N.C.1986).

**CONCLUSION**

The court finds that the Trustee, James R. Warren, may avoid the preference paid to the defendant, The Huntington National Bank, pursuant to 11 U.S.C. § 547(b). The defendant's claimed exception pursuant to 11 U.S.C. § 547(c)(2) is DENIED. Accordingly, judgment will be entered in favor of the plaintiff in the amount of $952.65 plus interest in accordance with 28 U.S.C. § 1961(a) from February 20, 1987, the date the complaint was filed, together with the cost of the filing fee for this adversary proceeding.

In order to recognize the effect of this decision on the interest of the defendant, the Huntington National Bank is granted thirty (30) days from the date of this decision in which to file an original or amended proof of claim in this case.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.