In re COOK UNITED, INC., Debtor.

Robert D. STOREY, Trustee in Bankruptcy, Plaintiff.

v.

DAYTON POWER AND LIGHT CO., Defendant.

Bankruptcy No. B87–01371(B).
Adv. No. B89–0662.

United States Bankruptcy Court,
N.D. Ohio, E.D.

Aug. 16, 1990.

See also, Bkrtcy., 117 B.R. 301, 117 B.R. 881.

Michael Arnovitz, Cleveland, Ohio, special counsel for trustee.

David Naftzinger, Thompson Hine & Flory, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is a preference action which is before the Court upon the parties' cross-motions for summary judgment. Following a hearing, a review of the pleadings and the record generally, the Plaintiff's motion for summary judgment is hereby granted, and the Defendant's motion for summary judgment is hereby denied.

In this Chapter 7 proceeding, Robert D. Storey (Trustee) caused to be filed a motion for summary judgment in this adversary proceeding which seeks the return of certain assets that were allegedly transferred by Cook United, Inc. (Debtor) to the Dayton Power and Light Company (DPLC) on a preferential basis. In response, DPLC caused to be filed its motion for summary judgment which asserts that the subject transfer was an exception to any voidable preference.

### I.

In consideration of these matters, the Court must determine, pursuant to Rule 7056, Bankr.R., whether there exists a genuine issue as to any material fact to warrant a grant of summary judgment. Section 547(b) of the Bankruptcy Code [11 U.S.C. 547(b)] addresses avoidable preferential transfers. In brief, that provision makes avoidable any transfer of an interest of the Debtor in property whereby the transfer was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within ninety days before petition filing, or between ninety days and one year of petition filing if the creditor was an insider; and (5) enabled the creditor to receive more than it would have received on liquidation. See, 11 U.S.C. 547(b)(1–5). In the matter at bar, however, the parties have stipulated to the existence of each applicable element under § 547(b), causing the subject transfers to be avoidable. See, Stipulations.[1] DPLC contends that although voidable, the transfers are not void as they were affected by the "ordinary course of business" exception to a preferential transfer. Under § 547(c)(2), a trustee may not avoid a transfer to the extent that it was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in

---

1. The parties have further stipulated that the dollar amount in question is $28,906.66, rather than the $62,873.70, initially complained of.

the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. See, 11 U.S.C. 547(c)(2).

## II.

The transfers which are the subject of this preference action concern five (5) utility payments made by the Debtor to DPLC during the ninety-day period prior to the Debtor filing its second Chapter 11 petition on April 22, 1987.[2] Upon receipt of the payments, DPLC applied it to three (3) separate accounts under the Debtor's name, as follows:

| Account No. | Billing Date | Amount Invoiced | Date Due | Payment Received | Days Late |
|---|---|---|---|---|---|
| 52–1245–3013–3056–1–0 | 12–16–86 | $8,466.03 | 1–6–87 | $8,466.03 | 35 |
| 52–1251–3374–3025–2–5–0 | 12–16–86 | $4,033.28 | 1–6–87 | $4,033.28 | 35 |
| 53–1176–2690–4051–1–0 | 12–15–86 | $7,998.88 | 1–5–87 | $7,993.75 | 36 |

The above-stated account payments were made by the Debtor's check dated 2–3–87 which was received by DPLC on 2–10–87 in an amount of $20,493.06. Another check issued by the Debtor on 3–24–87 in the amount of $16,637.26 and received by DPLC on 3–27–87 was applied to three other of Debtor's accounts in the following manner:

| Account No. | Billing Date | Amount Invoiced | Date Due | Payment Received | Days Late |
|---|---|---|---|---|---|
| 53–1176–2690–4051–1–0 | | $ 335.02 * | | $ 335.02 | — |
| " | 11–16–87 | $8,553.07 | 2–9–87 | $8,553.07 | 36 |
| " | 2–16–87 | $7,749.17 | 3–9–87 | $7,749.17 | 16 |

The third payment was made by the Debtor's check issued in the amount of $7,695.63 dated 3–27–87 and was received by DPLC on 4–1–87. It was allocated in the Debtor's account as follows:

| Account No. | Billing Date | Amount Invoiced | Date Due | Payment Received | Days Late |
|---|---|---|---|---|---|
| 53–1251–3374–3025–2–5 | | $ 139.24 * | | $ 139.24 | — |
| " | 1–17–87 | $3,866.50 | 2–9–87 | $3,866.50 | 51 |
| " | 2–17–87 | $3,779.89 | 3–10–87 | $3,689.89 | 22 |

A fourth payment was made by the Debtor's check dated 4–1–87 in the amount of $8,910.33 and was received by DPLC on 4–6–87. This payment was accounted by DPLC in the following manner:

2. The Debtor's first voluntary Chapter 11 petition was filed in this Court in 1984 (Case No. B84–0253), wherein its plan of reorganization was confirmed in September of 1986. Seven months later, the Debtor, again, filed a voluntary Chapter 11 petition in April of 1987. In November of 1987, the second Chapter 11 case was converted to the present Chapter 7 case.

* Reflects penalties assessed by DPLC against the Debtor for late payments.

**887**

| Account No.<br>2–1245–3013–3056–1–9<br>〃 | Billing<br>Date<br>‒‒‒‒‒<br>1–17–87 | Amount<br>Invoiced<br>$ 337.73 **<br>$8,572.60 | Date<br>Due<br>‒‒‒‒‒<br>2–9–87 | Payment<br>Received<br>$ 337.73<br>$8,572.60 | Days<br>Late<br>—<br>56 |
|---|---|---|---|---|---|

The Debtor's fifth check, dated 4–10–87, was issued in an amount of $9,137.42 and was received by DLPC on 4–14–87. This payment was allocated by DPLC in the following manner:

| Account No.<br>52–1245–3013–3056–1–9 | Billing<br>Date<br>2–17–87 | Amount<br>Invoiced<br>$9,327.42 | Date<br>Due<br>3–10–87 | Payment<br>Received<br>$9,137.42 | Days<br>Late<br>35 |
|---|---|---|---|---|---|

It is undisputed that the five payments made by the Debtor were made during the ninety-day preference period. The Trustee asserts that during the nine-month period prior to the preference period, the Debtor's utility payments to DPLC were made timely in accordance with due dates established by DPLC, except for two payments which were late (i.e., payments received by DPLC on 10–27–86 and on 11–18–86). In addressing the issue of avoidability, the Court must examine the nature of the course of dealings between the parties prior to the subject preferential period. DPLC contends that the dispositive period to assess course of dealings should be between September, 1986 and April 22, 1987, which reflects the post-confirmation era of the Debtor's initial Chapter 11 and the time of the filing of the second Chapter 11 case which was converted to liquidation proceedings under Chapter 7. On the other hand, the Trustee argues that such a period is too delimiting, and the Court, more appropriately, should examine the parties' course of dealings over a more extended period of time. Unfortunately, neither party has offered billing data prior to March 19, 1986 to allow the Court to examine the Debtor's payment history during a more extended period. The earliest delinquent payment data provided by the Trustee (Ex. "AA")[3] shows that DPLC assessed a penalty in an amount of $266.10 on September 18, 1986 for a payment that was overdue on account # 52–1245–3013–3056–1–9. In fact, on accounts numbered 52–1245–3013–3056–1–9, 53–1251–3374–3025–2–5, and 53–1176–2690–4051–1–0, a total of six penalty payments are reflected on the Trustee's Exhibit "AA" for late payments made by the Debtor and received by DPLC. All six of those late penalty payments were invoiced and were received beyond the subject preferential period, totalling $1,443.84. The six penalty invoices were among a total of thirty-six invoices reflected on transaction summary (Ex. "AA"). Also, included in the thirty-six invoices are six penalty payments which were assessed and received by DPLC within the subject preferential period. DPLC has not disputed the data submitted by the Trustee in Ex. "AA". In consideration of this data, it is quite apparent that the Debtor's prior course of dealings with DPLC reflected payments which were generally paid on a timely basis and not one reflecting late payments. The late payments noted were exceptional.

In determining whether an exception to an avoidable preference is established under § 547(c)(2), the burden of proof is upon the party asserting the exception. In this case, the burden of proof is upon DPLC. That burden must be established by a preponderance of the evidence. Here, DPLC has failed to meet its burden of proof. Periodic late payments made to a creditor do not necessarily establish an ordinary course of business relationship. In

** Reflects penalties Assessed by DPLC against the Debtor for late payments.

3. "Summary of Transaction Between Cook United, Inc. and DPLC, etc."

order for an ordinary course of business relationship to exist regarding late payments, the lateness of the periodic payments must be the norm as opposed to the exception. In the instant matter, the Debtor's payment history reveals that its utility payments to DPLC were usually made on a timely basis.

On the subject of "lateness", the Eleventh Circuit opined:

Lateness is particularly relevant in determining whether payments should be protected by the ordinary course of business exception. As several courts have noted, this exception is directed primarily to ordinary trade credit transactions. These typically involve some extension of credit but are meant to be paid in full within a single billing cycle.... Because the credit extended is meant to be extremely short-term, Congress likened payment of trade credit to payment of current expenses. *In re Craig Oil Co.*, 785 F.2d 1563 (11th Cir.1986).

The current version of the § 547(c)(2) exception was adopted in the 1984 Amendments to the Bankruptcy Code. It was promulgated as a replacement for the former judicially-created "current expense" doctrine which posited that current expenses were not regarded as antecedent debts. Therefore, any payments thereon were not preferential. *In re Emerald Oil Co.*, 695 F.2d 833 (5th Cir.1983). Thusly, § 547(c)(2) codified the current expense rule. "Since the foundation of $547(c)(2) is the similarity of trade credit and current expenses, the scope of its protection is necessarily limited to trade credit which is kept current or other transactions which are paid in full within the initial billing cycle." *Craig Oil*, at 1567.

DPLC, as a public utility, provided electric and gas utility services to the Debtor and other commercial and residential users. In its affidavit of support (Ex. A), DPLC provided service on credit to the Debtor on "norm credit terms" and issued monthly billing statements. *Id.*, at ¶ 7. Although numerous penalties were assessed by DPLC against the Debtor's accounts for late payments, DPLC argues that no pay-

ments received from the Debtor were received more than 60 days after the due date, nor was there a discontinuation of the Debtor's utility service, no deposit requirements imposed, nor were any unusual terms, restrictions, or requirements applied to the Debtor's credit standing by DPLC. In brief, DPLC argues that it exercised its business judgment by allowing the Debtor's utility service to continue without interruptions. Notably, DPLC does not contest that many of the late payments mentioned above were received outside of its monthly billing cycle. In effect, DPLC suggests that its exercise of business judgment supplants or overrides any concern this Court should have relative to the lateness of payments received and its attendant impact on the parties' ordinary course of doing business. Such argument is without merit, as the business judgment rule and ordinary course of dealing criteria under § 547(c)(2) are distinguishable. That is, DPLC's decision to continue its service on credit to the Debtor, notwithstanding certain delinquent payments, does not absolve the fact that certain of the subject payments were, indeed, made outside of the ordinary course of business between the parties. DPLC's decision to assess penalties for the late payments received from the Debtor confirms this distinction. Further, the Debtor's conduct was unusual in that virtually all of the subject payments were paid lately, as opposed to the usual timely payments.

### III.

The legislative purpose of the § 542(c)(2) exceptions is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. *In re Advance Glove Mfg. Co.*, 761 F.2d 249, 251 (6th Cir.1985); H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 373–74 (1977), reprinted in 5 U.S.Code Cong. & Admin.News 1978, 5787, 6329 (1978); S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978), reprinted in 5 U.S.Code Cong. & Admin.News 1978, 5874 (1978). In deter-

mining whether the § 547(c)(2) is applicable, the creditor-transferee's knowledge or state of mind is irrelevant to the issue, unlike the former requirement under § 60 of the Bankruptcy Act of 1898. *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981). As articulated by one noted commentator:

> [I]nterest or motive is not a material factor in the consideration of an alleged preference under § 547. Generally speaking, it is the effect of a transaction, rather than the debtor's or creditor's intent, that is controlling. 4 Collier ¶ 547.01 at 547.12, 15th Ed.; See also, Countryman, "The Concept of a Voidable Preference in Bankruptcy," 38 Vand.L. Rev. 713 (1985).

Further, the legislative history of § 547 is clear to state that "a creditor's state of mind has nothing whatsoever to do with the policy of equality of distribution...." H.R.Rep. No. 95–595, *supra,* at 178; 5 U.S. Code Cong. & Admin.News 1978 at 6139. Thusly, the DPLC's assertion regarding its exercise of business judgment in this matter is irrelevant to the pivotal issue. The § 547(c)(2) exception is applicable to transactions which, although they are credit transactions technically, are not intended to remain unpaid for a long period of time. *Barash, supra,* at 511. In this Circuit, it is permissible for irregular payments to be considered "ordinary" for purposes of § 547(c)(2), but only in transactions where such irregularity constitutes the usual relationship or course of dealings between the parties. *In re Fulghum Construction Corp.*, 872 F.2d 739, 743 (6th Cir.1989). As explained above, this is not the situation in the present case.

### Conclusion

Accordingly, payments totalling $28,-906.66 made during the 90–day period prepetition were preferentially made to the extent not otherwise stipulated, and are not excepted under § 547(c)(2) of the Bankruptcy Code. As such, those payments are recoverable by the Trustee pursuant to § 550. The Trustee's motion for summary judgment is granted, and DPLC's motion for summary judgment is denied. DPLC is to remit to the Trustee the avoided payments of $28,906.66, with interest at the rate allowed under 28 U.S.C. § 1961, no later than fifteen (15) days from the entry of this order. Each party is to bear its respective costs.

IT IS SO ORDERED.