In re **FEDERATED MARKETING, INC.**
aka **Federated Mortgage
Corporation, Debtor.**

Milton L. **SPROWL, Trustee, Plaintiff,**

v.

**MIAMI VALLEY BROADCASTING
CORP. and WHIO, Inc.,
Defendants.**

Bankruptcy No. 3–87–02391.
Adv. No. 3–89–0292.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 14, 1991.

---

Steven O. Dean, Dayton, Ohio, for defendants.

Edward M. Smith, Dayton, Ohio, for plaintiff.

## DECISION ON ORDER GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding is before the court on the parties' cross motions for summary judgment (Doc. 28 and Doc. 29). Memoranda in support of these summary judgment motions (Doc. 30 and Doc. 31) have also been submitted.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, and (F)—proceedings to determine, avoid, or recover preferences, more specifically, whether payments made by Federated Marketing, Inc. to Miami Valley Broadcasting Corp. and WHIO, Inc. during the 90 day preference period may be excepted from avoidance under 11 U.S.C. § 547(c)(2).

## FINDINGS OF FACT

Based upon the parties' Agreed Statement Of Facts (Doc. 20), Agreed List Of Exhibits (Doc. 21), and depositions (Doc. 17,

Doc. 18, and Doc. 19), the court makes the following findings of fact:

1. Federated Marketing, Inc. (Debtor) arranged, brokered, and made real estate mortgage loans to consumers.

2. Miami Valley Broadcasting does business as WHIO TV and WHIO Inc. does business as WHIO AM/FM. WHIO TV and WHIO AM/FM (collectively Defendants) provide, respectively, television and radio broadcasting services.

3. On June 30, 1986, the Debtor applied for credit to obtain television advertising services from Miami Valley Broadcasting (WHIO TV) (Doc. 21, Ex. 22) and began advertising in October, 1986. Additionally, in either January or February of 1987, the Debtor began advertising with WHIO Inc. (WHIO AM/FM) (Doc. 17, dep. at 4–5); however, the Debtor did not open a credit account with WHIO AM/FM because WHIO/FM's normal practice was to utilize the credit application signed with WHIO TV when a customer had been advertising with WHIO TV.

4. An involuntary petition in bankruptcy was filed against the Debtor on August 4, 1987, and an amended petition was filed on August 13, 1987. An order for relief was filed on October 7, 1987.

5. On October 6, 1989, the Debtor's trustee in bankruptcy (Plaintiff) filed a complaint (Doc. 1) initiating this adversary proceeding. The complaint alleges that payments in the amount of $24,400 were made to the Defendants during the 90 day preference period, and thus may be avoided pursuant to 11 U.S.C. § 547. The complaint listed two claims for relief, one claim was brought against WHIO TV in the amount of $21,700, and the other claim was brought against WHIO AM/FM in the amount of $2,700.

6. The following constitutes the Debtor's payments to the Defendants *prior* to the 90 day preference period:

| Invoice Date | Invoice Amount | Date Pymt. Received | Days From Invoice |
|---|---|---|---|
| 10/26/86 | $ 6,330.00 | 1/12/87 | 78 |
| 10/26/86 | $ 700.00 | 1/12/87 | 78 |
| 11/27/86 | $ 9,865.00 | 1/12/87 | 46 |
| 11/30/86 | $ 370.00 | 1/12/87 | 43 |
| 11/30/86 | $ 9,160.00 | 1/12/87 | 43 |
| 12/28/86 | $12,575.00 | 2/04/87 | 38 |
| 12/28/86 | $ 312.50 | 2/04/87 | 38 |
| 1/25/87 | $ 9,660.00 | 2/27/87 | 33 |

7. The following constitutes the Debtor's payments to the Defendants *during* the 90 day preference period:

| Invoice Date | Invoice Amount | Date Pymt. Received | Check Number | Days From Invoice |
|---|---|---|---|---|
| 2/22/87 | $ 5,900.00 | 5/19/87 | 118 | 86 |
| 2/22/87 | $ 460.00 | 5/19/87 | 118 | 86 |
| 3/1/87 | $ 4,500.00 | 5/19/87 | 118 | 79 |
| (2/15/87 | $10,840.00 | 5/19/87 | 2154 | 93) |
| 2/15/87 | $10,840.00 | 5/27/87 | 2383[1] | 101 |
| NA[2] | $ 2,700.00 | 5/19/87 | 116 | NA |

1. This check replaced check number 2154 which was dishonored for nonsufficient funds.

2. NA indicates that the information is not available.

8. Check number 118, issued to WHIO TV in the amount of $10,860 (Doc. 21, Ex. 13), paid invoices which were 79 to 86 days old.

9. Debtor's check number 2154 was dated March 6, 1987, and was received by WHIO TV on or about May 19, 1987; however, it was returned by the drawee bank on May 21, 1987, for nonsufficient funds. Check number 2383 was issued on May 26, 1987, by the Debtor to replace check number 2154. This check was received by WHIO TV and paid by the bank on May 27, 1987 (Doc. 21, Ex. 10).

10. Check number 116 was issued to WHIO AM/FM in the amount of $2,700 (Doc. 21, Ex. 15). The invoices paid by check number 116 were destroyed; however, these invoices were issued in either January or February of 1987 (Doc. 17, dep. at 4–5) when the account was opened and, in either April or May of 1987, these invoices reached the 60 day limit, at which time they were considered delinquent.

11. The company policies of the Defendants are to deposit a check on the day it is received (Doc. 18, dep. at 11).

12. The invoice statements are marked net due in 30 days; however, the average time for outstanding invoices is "always around 60" days (Doc. 18, dep. at 15–16). At the 60 day interval, telephone calls are made to clients to remind them that payment is overdue; however, accounts are not turned over for collection until 120 days (Doc. 18, dep. at 15). The 60–day payment period is average for the Defendants and the industry (Doc. 19, dep. at 10–11).

## DISCUSSION

In considering the issues in this proceeding, the court must determine whether they are able to be resolved by summary judgment. The Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), established the standard under which a trial court should rule upon a motion for summary judgment:

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), the Court noted that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"; for example, "whether a jury [fact finder] could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." 477 U.S. at 254, 106 S.Ct. at 2513 (emphasis in original). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex*, 106 S.Ct. at 2553. Because no genuine issue of material fact exists, the court concludes that this matter is appropriate for summary judgment.

The parties having agreed (Doc. 20, para. 15) that the payments made to the Defendants, check number 116 in the amount of $2,700, check number 2383 in the amount of $10,840, and check number 118 in the amount of $10,860, meet the elements of a preferential transfer, the only issue pending before the court for resolution is whether these payments may be excepted from avoidance pursuant to 11 U.S.C. § 547(c)(2), upon which the creditor bears the burden of proof. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3rd Cir.1989); *Storey v. Dayton Power and Light Co. (In re Cook United, Inc.)*, 117 B.R. 884, 887 (Bankr.N.D.Ohio 1990); *Warren v. Huntington National Bank (Matter of Ullman)*, 80 B.R. 101, 102 (Bankr.S.D.Ohio 1987).

■ Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

.        .        .        .        .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

At the outset, the court notes that because it is presented with the issue of whether late payments were made in the ordinary course of business, the operative set of facts include the date when payment was received. As the Sixth Circuit recently held:

[I]n the case of check transactions, with the exception of post-dated checks, transfer occurs upon delivery of the check from debtor to creditor, and that delivery occurs upon the creditor's actual receipt of the check. We also agree with the view of the First and Tenth Circuits that the check must be presented for payment within "the 30–day period deemed reasonable under the U.C.C." and honored upon presentment in order for the delivery date to be considered the time of transfer.

*Official Unsecured Creditors' Committee Of Belknap, Inc. v. Shaler Corp. (In re Belknap, Inc.)*, 909 F.2d 879, 884 (6th Cir. 1990) (footnote omitted).

In interpreting § 547(c)(2), the Sixth Circuit in *Waldschmidt v. Ranier (In re Fulghum Const. Corp.)*, 872 F.2d 739 (6th Cir. 1989) stated:

The Bankruptcy Code does not define "ordinary course of business" or "ordinary business terms." Moreover, the legislative history of the provision is notably "sparse." *See, WJM, Inc. v. Mass. Dept. of Pub. Welfare*, 840 F.2d 996, 1010 (1st Cir.1988). However, subsequent case law is in agreement that this section was intended to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee." *In re Energy Co-Op Inc.*, 832 F.2d 997, 1004 (7th Cir. 1987). Congress enacted § 547(c)(2) "to leave undisturbed normal financial relations, because they do not detract from the general policy of the preference section to discourage unusual action by either the debtor or creditors during the debtor's slide into bankruptcy." *In re Advance Glove Mfg. Co.*, 761 F.2d 249, 251 (6th Cir.1985) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874).

Despite the foregoing standards, there is no precise legal test which can be applied; rather, this court must engage in a "peculiarly factual" analysis. *In re First Software Corp.*, 81 B.R. 211, 213, (Bankr.D.Mass.1988). *See also In re Craig Oil Co.*, 785 F.2d 1563, 1565 (11th Cir.1986) (applicability of § 547(c)(2) turns on the specific events surrounding debtor's payments to defendant). The focus of this court's inquiry must be directed to an analysis of the business practices which were unique to the particular parties under consideration and not to the practices which generally prevailed in the industry of the parties. *See*

*WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1011 (1st Cir.1988) ("the cornerstone of this element of a preference defense is that the creditor needs demonstrate some consistency with other business transactions *between the debtor and the creditor*") (quoting *In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr.W.D.Okla. 1986)) (emphasis added). Even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties. *In re White*, 58 B.R. 266, 270 (Bankr.E.D.Tenn.1986) (payments by debtor were "ordinary" even if they were made on irregular basis and debtor was allowed to maintain a significant amount owing to creditor at all times). *See also In re Craig Oil Co.*, 785 F.2d 1563, 1566–67 (11th Cir.1986) (examining past terms of business between the parties to determine if payments were made according to ordinary business terms). (ftn. 5)

5 Consideration of the practices of the parties might not conclude the § 547(c)(2) analysis; industry practice might be relevant to the § 547(c)(2)(C) element of "ordinary business terms." *E.g. In re Magic Circle*, 64 B.R. 269, 274 (Bankr.W.D.Okla.1986).

*In re Fulghum*, 872 F.2d at 743; *Accord Gosch v. Finn (In re Finn)*, 909 F.2d 903, 907 (6th Cir.1990).

In determining whether a transaction was made in the ordinary course of business, courts have examined several factors, including the amount, manner, and timing of the transaction, and the circumstances under which the transfer was made. *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir.1989). "Courts have found the following facts and circumstances as indications that the transfer was not ordinary: untimely payments, payments made in an unusual form, payments made in an unusual amount, and payments made for transactions that are unusual as between the parties." *Warren v. Huntington National Bank (Matter of Ullman)*, 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987) (citations

omitted); *Accord DuVoisin v. Anderson (In re Southern Indus. Banking Corp.)*, 92 B.R. 297, 304 (Bankr.E.D.Tenn.1988). The debt existing between the Debtor and the Defendant is of the type which is typically incurred between these parties in the ordinary course of business (§ 547(a)(2)(A)); however, the payments made to WHIO TV were not timely made, as they exceeded 30 days. Therefore, it is necessary to determine whether these transactions were made in the ordinary course of business by examining the course of dealings between WHIO TV and the Debtor. *In re Fulghum*, 872 F.2d at 743. "Periodic late payments made to a creditor do not necessarily establish an ordinary course of business relationship. In order for an ordinary course of business relationship to exist regarding late payments, the lateness of the periodic payments must be the norm as opposed to the exception." *In re Cook United, Inc.*, 117 B.R. 884, 887–88 (Bankr. N.D.Ohio 1990).

The payment history between the Debtor and WHIO TV is not extensive; however, the evidence submitted indicates that the initial two payments made to WHIO TV were made 78 days after invoice, and that six of the Debtor's payments, excluding payments made during the 90 day preference period, were made 33 to 46 days after invoice. Additionally, the court notes that beginning with the 90 day preference period, the Debtor's checks paid invoices which were 79 to 101 days old. In consideration of these facts, the court finds that the delinquency of the Debtor's payments constituted an exception to the parties' course of dealings and not the norm, and therefore, these two transactions were not made in the ordinary course of business.

Additionally, it is noted that checks dishonored for nonsufficient funds generally do not constitute payments made within the ordinary course of business. *In re Southern Indus. Banking Corp.*, 92 B.R. 297, 302 (Bankr.E.D.Tenn.1988); *Still v. Kingsberry Homes (In re Downs)*, 65 B.R. 1, 2–3 (Bankr.E.D.Tenn.1985). Moreover, no history of nonsufficient funds checks was offered by WHIO TV to demon-

strate that this transaction was consistent with other transactions between the parties.[3]

Further, to the extent that industry practices are to be considered in the determination of whether a transaction was made in the ordinary course of business, the court concludes that the Debtor's payments were also delinquent as compared to WHIO TV's and the industry's average time period for payment, 60 days.

Accordingly, the court finds that the payments made to WHIO TV in the sum of $21,700 were not made in the ordinary course of business. Thus, these transactions fail to fall within the exception to avoidance provided by § 547(c)(2).

■ In addition, the plaintiff seeks to avoid a payment made to the defendant, WHIO AM/FM, in the amount of $2,700. This payment was received by WHIO AM/FM on May 19, 1987 (Doc. 21, Ex. 15), and is believed to be in payment of invoices dated from January or February of 1987 (Doc. 17, dep. at 4–5).

■ Although the Debtor had no credit history with WHIO AM/FM, as it had just begun advertising on WHIO AM/FM, examination of its credit history with WHIO TV, with whom it shared credit information, reveals that the payment was untimely and not consistent with the payment history established with WHIO TV. As previously stated, late payments, to be considered as made in the ordinary course of business, must be consistent with other transactions between the parties. *In re Fulghum*, 872 F.2d at 743; *In re Cook United, Inc.*, 117 B.R. at 888.

Further, having calculated the amount of time existing between the time of payment on May 19, 1987, and the approximate time the invoice was issued, in either January or February of 1987, the court concludes that this payment to WHIO AM/FM also exceeded the average payment time of 60 days. Therefore, this payment was not made within the ordinary course of business, and thus, fails to come within § 547(c)(2).

The plaintiff has requested that the court award prejudgment interest on the payments which may be avoided pursuant to § 547(b). As this court has previously held, "prejudgment interest at the rate established by 28 U.S.C. § 1961(a) will be permitted from the date the complaint was filed until payment is made to the trustee." *Matter of Ullman*, 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987); *Accord Parmelee v. Bank of Greensburg (In re L & T Steel Fabricators, Inc.)*, 102 B.R. 511, 520 (Bankr.M.D.La.1989); *Rafoth v. Bailey (In re Baker & Getty Financial Services, Inc.)*, 88 B.R. 792, 800 (Bankr.N.D.Ohio 1988).

Accordingly, the plaintiff is granted summary judgment against the defendant, WHIO TV in the amount of twenty-one thousand, seven hundred dollars ($21,700.00) plus the applicable rate of interest in accordance with 28 U.S.C. § 1961(a) from October 6, 1989, the date this complaint was filed, and is granted summary judgment against the defendant, WHIO AM/FM, in the amount of two thousand, seven hundred dollars ($2,700.00), plus the applicable rate of interest in accordance with 28 U.S.C. § 1961(a) from October 6, 1989. Further, the plaintiff is granted the cost of the fee for filing this adversary proceeding.

In order to recognize the effect of this decision on the Defendants' interest, the Defendants, Miami Valley Broadcasting and WHIO Inc. are granted thirty (30) days from the date of this decision in which to file an original or amended proof of claim.

**3.** The Defendants have sought to introduce testimony obtained from the deposition of Ms. Coni Edwards, an employee of WHIO TV. Ms. Edwards stated that when this check was returned for nonsufficient funds, she called the Debtor's place of business and spoke to an accounts payable clerk, whose name she was unable to recall (Doc. 19, dep. at 25–26). Ms. Edwards was informed by the accounts payable clerk that the money had been deposited into the wrong account and that a new check would be issued. This testimony is hearsay and is not admissible. F.R.Evid. 801; F.R.Evid. 802.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.