**In re FALECK & MARGOLIES, INC., et al., Debtors,**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FALECK & MARGOLIES, INC., et al., Appellee,**

v.

**VARDI STONEHOUSE, INC., Appellant.**

**No. 92 Civ. 2738 (CSH).**

United States District Court, S.D. New York.

April 8, 1993.

**124**

Finkel, Goldstein, Berzow & Rosenbloom, New York City, for Unsecured Creditors Committee of Faleck & Margolies, Inc.

Nathanson, Devack & Memmoli, Franklin Square, NY, for Vardi Stonehouse, Inc.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Vardi Stonehouse, Inc., ("Vardi") appeals from a decision of the Bankruptcy Court of the Southern District of New York, (Pru-dence Abram, J.) denying its motion for summary judgment and granting the Committee of Unsecured Creditors (the "Committee") summary judgment in an adversary proceeding to avoid a payment made by the Debtor, Faleck & Margolies ("F & M"), as a preferential transfer under section 547 of the Bankruptcy Code.

### BACKGROUND

Vardi is a wholesale distributor of precious and semi-precious gems. From August 1987 through April 1989, Vardi received orders from F & M for various gemstones which it shipped to F & M in the ordinary course of business. All shipments were made on 90 day credit terms.

F & M filed a petition for bankruptcy in the Bankruptcy Court for Southern District of New York on May 18, 1989. The Committee commenced this adversary proceeding alleging that two payments made by F & M to Vardi were preferential transfers which could be avoided pursuant to section 547(b) of the Bankruptcy Code. This appeal concerns only one of those payments, the February 24, 1989 payment for $24,242.22.

Vardi contends that the payment was made in the ordinary course of business, and thus cannot be avoided under section 547(c).

### DISCUSSION

The Committee claims that the payment to Vardi constituted a "preferential transfer" as defined by the Bankruptcy Code, and is consequently avoidable under 11 U.S.C. § 547(b).

Section 547(b) provides that a trustee may avoid any transfer of the property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; and

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Vardi does not dispute that the payment at issue would be avoidable under this section; Vardi contends, however, that the payment falls with the "ordinary course of business" exception, which is set forth in section 547(c):

The trustee may not avoid under this section a transfer

.    .    .    .    .

(2) to the extent that such transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms ...;

Vardi argues that the February 24, 1989 payment satisfies these requirements, and thus is not avoidable as a preferential transfer. The Committee disputes Vardi's characterization of the payment as made in the ordinary course of business.

As both parties have noted, the Bankruptcy Code does not define "ordinary course of business" or "ordinary business terms". Courts have not defined a precise legal test which can be applied; rather, courts must engage in a "peculiarly factual" analysis. *See Sprowl v. Miami Valley Broadcasting Corp. and WHIO, Inc., (In re Federated Marketing, Inc.),* 123 B.R. 265 (Bankr.S.D.Ohio 1991). Several factors are relevant to this analysis, including the amount, manner and timing of the transaction, and the circumstances under which the transfer was made. *See Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir.1989). Factors which signal a transfer out of the ordinary include "untimely payments, payments made in an unusual form, payments made in an unusual amount, and payments made for transactions that are unusual as between the parties." *Warren v. Huntington National Bank (Matter of Ullman),* 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987). However, even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of section 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties.

The terms of sale between F & M and Vardi provided for payment within 90 days. F & M, however, never complied with those terms. Payments were made from 103 days after invoice date up to 236 days after invoice date. A substantial portion of the invoices were paid 150–180 days after invoice date. Vardi has also submitted evidence that late payments were customary in the industry.

Vardi argues that the February 24, 1989 payment was in keeping with the course of dealings between the parties, as it was applied to invoices which were 190–224 days beyond invoice date. Since payments this late were typical of the relationship between Vardi and F & M, Vardi contends that this payment should fall within the ordinary course of business exception, and not be avoided.

The Committee does not dispute the characterization of the Vardi–F & M course of dealings, or the course of dealings within the industry. It argues, however, that despite Vardi's tradition of accepting late payments, certain aspects of this payment make it presumptively non-ordinary.

■ The Committee's challenge to the February 24, 1989 payment, which was actually a payment on a promissory note, rests on two separate grounds. While conceding that the issuance of promissory notes was customary between the parties when invoices became particularly overdue, the Committee argues that the payment on this note was not ordinary, because it was paid 25 days after the note was due. The Committee asserts that it is presumptively

non-ordinary for a promissory note to be paid 25 days after due date.

The Committee lacks support for this proposition. I cannot see why late payments on a promissory note are any more "non-ordinary" than late payments on invoices. Both are contrary to normal business practices. What matters is whether there is a consistent course of dealings. If Vardi can establish a tradition of late payment on promissory notes, it can qualify for the ordinary course of business exception.

 The Committee's second argument is that Vardi cannot establish a course of dealing of late payments on promissory notes. The Committee notes that there were seven promissory notes between the parties, of which this was the fourth. The first three were all paid on their due dates; the last two were never paid. The promissory note at issue was paid twenty five days after its due date. Accordingly, Vardi cannot establish that late payment on its promissory notes was ordinary in its course of business with F & M.

Vardi argues that the date the promissory note was due is irrelevant, since the promissory note was mere evidence of the extensions of time which were routinely granted in this relationship. Vardi contends that the critical factor is the due dates of the invoices which created the original indebtedness. Vardi notes that the invoices represented by the promissory note were 190–224 beyond invoice date, not unlike the other late payments made by F & M.

The issue thus turns on whether the focus is on the course of dealings as to promissory notes, which were timely paid; or on the course of dealings of payment on invoices, which were not timely made. If the invoices are the relevant benchmarks then the payments were made in the ordinary course of business; if the promissory notes are the relevant benchmarks then the payments were not made in the ordinary course of business.

I conclude that the promissory notes are the relevant benchmarks in this analysis, and F & M's payment to Vardi twenty-five days late was not in the ordinary course of business. The fact that the three prior promissory notes were paid on their due dates suggests that even in an environment of late payments, the promissory notes were perceived as items which had to be paid in a timely fashion. Accordingly, since the payment for $24,242.22 was not made within the ordinary course of business, the trustee can avoid the transfer under section 547 of the Bankruptcy Code.

For the reasons discussed above, the March 3, 1992 decision of Judge Abram is affirmed.

It is SO ORDERED.