**In re YOUTHLAND, INC., Debtor.**

**YOUTHLAND, INC., Plaintiff,**

**v.**

**SUNSHINE GIRLS OF FLORIDA, INC., et al., Defendants.**

**Bankruptcy No. 2–90–08622.**
**Adv. Pro. No. 2–92–0311.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 9, 1993.

Michael S. Kranitz, Roger L. Schantz, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for debtor.

J. Patrick Thomas, Davis & Thomas, Columbus, OH, for creditor.

### OPINION AND ORDER ON COMPLAINT TO RECOVER PREFERENCE

BARBARA J. SELLERS, Bankruptcy Judge.

On August 11, 1992, Youthland, Inc., ("Youthland") commenced an adversary action against certain trade creditors to recover transfers alleged to be preferential within the meaning of 11 U.S.C. § 547. All claims have been dismissed, compromised, or reduced to default judgment except the claim against Sunshine Girls of Florida, Inc. ("Sunshine Girls").

Pursuant to 28 U.S.C. § 1334(b), the General Order of Reference entered in this district, and 28 U.S.C. § 157(b)(2), the Court has jurisdiction to hear and finally determine this core proceeding.

The Court heard Youthland's action against Sunshine Girls on June 28, 1993. The parties stipulated that the transfers at issue met all requirements for preferential transfers as set forth in 11 U.S.C. § 547(b)(1)–(5). The sole issue before the Court is whether the transfers are excepted from avoidance as transfers made in the ordinary course of business within the meaning of 11 U.S.C. § 547(c)(2).

### I. The "Ordinary Course" Defense Generally

Youthland's business was selling childrens' apparel at retail. Sunshine Girls manufactured and supplied lines of girls' wearing apparel to Youthland beginning in 1978. Youthland filed its petition under Chapter 11 of the Bankruptcy Code on December 28, 1990.

Sunshine Girls usually shipped its product on either "net 30 days" or E.O.M. payment terms.[1] There is no dispute that, as a matter of course, Youthland's payments regularly were made after the time provided by these terms.

In this circuit, a party asserting an "ordinary course" defense must prove each of the three elements of 11 U.S.C. § 547(c)(2) by a preponderance of the evidence. *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 242–243 (6th Cir.1992). See, *also Staats v. Branham Sign Co. (In re Circleville Distributing Co.)*, 84 B.R. 502, 503 (Bankr.S.D.Ohio 1988).

Section 547(c)(2) reads as follows:

The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (1992).

Determining whether a payment is made in the ordinary course of business and according to ordinary business terms is a

---

1. It was adduced at trial that the payment terms "net 10 E.O.M. (end of month)" meant that payment was due by the tenth day of the month immediately following the month in which delivery was made if delivery occurred between the first and nineteenth day of that month. If delivery occurred after the nineteenth day of a given month, payment was expected by the tenth day of second month after the month in which delivery occurred. Testimony of Paul Dubin, Tr. at 27.

factual question. *Yurika Foods Corporation v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir.1989); *Waldschmidt v. Ranier (In re Fulghum Construction Corp.)*, 872 F.2d 739, 742 (6th Cir. 1989). The timing, amount, manner of payment and the circumstances under which the transfer was made all must be examined. *Yurika Foods*, 888 F.2d at 45.

■ The purpose for the "ordinary course" exception is to encourage creditors to engage in normal financial relations with a financially troubled debtor. Such encouragement does not, however, protect unusual actions by a debtor or its creditors which might "hasten" a debtor's "slide" into bankruptcy. *See, generally,* 4 *Collier on Bankruptcy,* ¶ 547.10 (15th ed. 1991); S.Rep. No. 989, 95th Cong., 2d Sess. (1988).

■ The fact that payments are made late or on an irregular basis does not establish that such payments are unusual or extraordinary if such payments are consistent with an otherwise established course of dealings. *Fulghum Construction,* 872 F.2d at 743; *Finley v. Mr. T's Apparel, Inc. (In re Washington Mfg. Co.),* 144 B.R. 376, 378, 380 (Bankr.M.D.Tenn.1992). However, "lateness of the payments must be the norm as opposed to the exception." *Sprowl v. Miami Valley Broadcasting Corp. and WHIO, Inc. (In re Federated Marketing, Inc.),* 123 B.R. 265, 270 (Bankr.S.D.Ohio 1991); citing *Storey v. Dayton Power and Light Co. (In re Cook United, Inc.),* 117 B.R. 884, 887–88 (Bankr. N.D.Ohio 1990).

## II. *The Specific Elements of the "Ordinary Course" Defense*

### A. The Debts as Ordinary for the Businesses of Youthland and Sunshine Girls. § 547(c)(2)(A).

■ The first element of § 547(c)(2) requires an examination of the debts incurred for which the transfers were payment for the normality of such incurrences in each party's business operations generally. If the debts were incurred in the routine operations of Youthland and Sunshine Girls, then they can be said to have been incurred in the ordinary course of each party's business.

There is no significant dispute that the transfers in this instance were for debts incurred by Youthland in the ordinary course of its business. Likewise, Sunshine Girls' business was to supply goods to clothing retailers. No evidence was presented that the specific debts for which the questioned transfers were made were incurred by either party in any unusual activity. Therefore, Sunshine Girls has established the first element of the ordinary course defense for all the payments it received from Youthland during the preference period.

### B. The Transfers as Ordinary Between Youthland and Sunshine Girls. § 547(c)(2)(B).

■ The second element of § 547(c)(2) requires the Court to determine the "ordinariness" of the transfers in the relationship between the two parties. That finding is factual, but focuses on a subjective analysis of the parties' business dealings with each other. "The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor." *Fred Hawes,* 957 F.2d at 244 (emphasis in original).

Sunshine Girls offered testimony that Youthland paid its accounts with Sunshine Girls on a "consistently late" basis, generally between 60 to 90 days past the terms specified for payment. In some instances those payments exceeded 100 days. Except for normal transmission of monthly account statements and occasional telephone calls, Sunshine Girls never made extraordinary attempts to collect Youthland's accounts. Despite Youthland's tardiness, Sunshine Girls continued to ship goods on the basis of the twelve-year course of dealings between the parties. The chief executive officer of Sunshine Girls stated that "I always did business with them. They were honest people, and I believed in all truthfulness that they intended to pay me and they always had." Tr. at 14. Because both parties ignored the express payment terms without consequence, Sunshine Girls argues that all admittedly late payments made during the 90 day period before the bankruptcy filing were ordinary in

the parties' course of business. According to Sunshine Girls, excepting such payments from recovery as preferences would be consistent with the legislative policy encouraging normal, uninterrupted financial dealings between a supplier and a prospective bankruptcy debtor.

Youthland admits that, prior to the 90 day preference period, Sunshine Girls received payments which were past due. By contrast, however, Youthland asserts that the average days past due during the 90 day preference period increased significantly to the point that the questioned payments became outside the ordinary course of business between Youthland and Sunshine Girls.

■ Sunshine Girls collected its receivables on a "total account basis" approximately 54 days after payment of those receivables was due. This average was calculated for all accounts held by Sunshine Girls, including those of Youthland. Most of Sunshine Girls' customers, however, were larger department store retailers who generally paid on time. It was not disputed that Youthland was a smaller specialty shop account and that such accounts typically paid late. Thus, the usefulness of any calculated average which includes Sunshine Girls' larger accounts is fundamentally skewed and misstates the true business relationship between these parties. Any subjective determination of the course of dealings between these parties cannot be evaluated on the basis of averages which include other customers, if those customers pay on a statistically different basis.

Youthland presented a detailed and analytical breakdown of its transactions with Sunshine Girls during three periods: the 90–day preference period, 1989, and a brief period in 1988. Although this analysis shows a slower payment trend during the 90–day preference period, it is not wholly illustrative of the parties' established course of dealings. Other evidence indicates that it is more probable that the 54–day average calculated in that manner by Youthland, which coincidentally is the same as the average for all accounts, understates the twelve year account history. Accordingly, the Court is not persuaded that every payment made by Youthland during the 90 day preference period was outside the norm of these parties' course of prior conduct. A range of payment dates may be more useful in this context than an average.

The testimony consistently suggested that Sunshine Girls regularly accepted and Youthland regularly tendered payments up to 90 days past due. The Court was not presented with any evidence that collection efforts during the 90 day period were in any way atypical from previous practice. Accepting this testimony as true, it would be implausible to consider any payment made within 90 days of the date due to be outside the parties' normal business conduct. Although some later payments may have occurred, those likewise were not indicative of the parties' usual conduct. Therefore, the Court finds that those payments received by Sunshine Girls from Youthland during the preference period which were made within 90 days past due are within the ordinary course of business between Sunshine Girls and Youthland.

Consistent with that finding, Sunshine Girls has established the second element of 11 U.S.C. § 547(c)(2) for six of the ten preferential transfers. Four transfers were made more than 90 days after they were due: October 22, 1990 for $1,024.29; October 26, 1990 for $785; November 13, 1990 for $2,000; and November 19, 1990 for $1,101.40. Those payments were not made in the ordinary course of business between Sunshine Girls and Youthland.

### C. The Transfers as Made On Ordinary Business Terms.

■ The third element of § 547(c)(2) requires Sunshine Girls to establish that the payments from Youthland were made according to ordinary business terms. This is an objective determination, based upon prevailing industry standards. *Fred Hawes*, 957 F.2d at 239.

■ Sunshine Girls' expert witness testified that "anything under 120 days (past due) is not considered late" where the account debtor is a "specialty shop" in the children's apparel business. Tr. at 43 and 44. Limited capitalization causes such small specialty shops to pay more slowly than large institutional account debtors. Slow payment from

a small specialty shop, up to 120 days past due, would not be a basis for collection in the childrens wear industry. Tr. at 43–44. To counter that testimony, Youthland offered information from three financial reporting services to establish that the median number of days outstanding for accounts in the apparel industry generally is approximately 58 days.

 The Court believes that the relevant industry to be examined is the children's apparel industry, rather than the apparel industry generally. Information concerning this industry is easily obtainable and children's apparel appears to be a recognized "business". However, when business terms are being determined under the objective test of § 547(c)(2)(C), the business under scrutiny should not be divided further between large and small accounts. That consideration is appropriate as part of the subjective test of § 547(c)(2)(B), but not for the objective analysis required by § 547(c)(2)(C). Courts "should not look to only the manner in which one particular creditor interacted with similarly situated debtors, but rather analyze whether the particular transaction in question comports with the standard conduct of business within the industry." *Fred Hawes,* 957 F.2d at 246. Because the childrens' wear industry consists of competitors of all sizes, an objective analysis should include observation of payment trends generally.

The use of a calculated average or median, however, without identifying and considering the elements which comprise the range from which the number is calculated, may not produce a reliable indicator of ordinariness in a given business. While the Court should avoid subclassification of the industry for the reasons set forth above, it must be fully cognizant of all factors which might otherwise influence an average or median. Likewise, the Court must consider any evidence that a reported statistic is unrepresentative of an entire industry.

After consideration of all such factors identified in the testimony and the exhibits, the Court determines that a suitable range for ordinary business terms in the childrens' apparel industry, within the meaning of 11 U.S.C. § 547(c)(2)(C), is between 30 and 80 days past due.

Accordingly, five payments made by Youthland during the 90 day preference period were not made according to ordinary business terms in the childrens' apparel industry. Those payments are the ones made on October 5, 1990 for $5,832, October 22, 1990 for $1,024.29, October 26, 1990 for $785, November 13, 1990 for $2,000 and November 19, 1990 for $1,101.40. The payment on October 5, 1990, thus fails the test for ordinary course in the industry, although it is within the ordinary course of dealings between Youthland and Sunshine Girls.

### III. *Conclusion*

Based upon the foregoing, the Court finds that five of the ten transfers made by Youthland to Sunshine Girls within the preference period are preferential payments not excepted from avoidance by the ordinary course defense of § 547(c)(2). The remaining transfers are excepted under the defense. That finding means that Youthland may avoid transfers totalling $10,742.69. A judgment will be issued consistent with that finding.

IT IS SO ORDERED.