**In re James Edward FARRIS, Debtor.**

**W.D. BAILEY, Vance Bailey, and Waylon Bailey, partners, Brantley Gin Company, a general partnership, Plaintiffs,**

**v.**

**James Edward FARRIS and Collier H. Espy, Jr., Defendants.**

**Adv. No. 84–0006.**

United States Bankruptcy Court,
M.D. Alabama.

May 1, 1984.

L. Merrill Shirley, Elba, Ala., for plaintiff.

Jackson W. Stokes, Elba, Ala., for W.D. Bailey, et al.

Collier H. Espy, Jr., Dothan, Ala., Trustee.

## OPINION ON COMPLAINT TO RECOVER PROCEEDS FROM THE SALE OF SECURED PROPERTY

RODNEY R. STEELE, Bankruptcy Judge.

The plaintiffs in this case seeks to have the trustee pay over to them the sum of $5,075, realized by the trustee from the sale of a 1977 Chevrolet C–60 1½ Ton dump truck. The trustee sold this truck to Black and Botts Oil Company for $7,100, and now holds the balance of funds from the sale of that truck in his trust account, after he paid General Motors Acceptance Corporation the balance owed on that first lien.

The trustee and the plaintiffs agreed to this sale, with the proviso that this court would determine whether the plaintiffs held any security interest in the truck, and whether the trustee ought to be required to pay over any portion of the sale proceeds to the plaintiffs.

The complaint was set to be heard on Wednesday, March 14, 1984, at Dothan, and notice was supplied to the plaintiffs and the defendants.

Thereafter, the matter was continued and was by agreement set to be heard on April 4, 1984, at Dothan.

At that time, the parties submitted upon the complaint, and upon certain agreed-to facts and the filing of a brief by the plaintiffs. The trustee has answered in this case denying the material allegations of the complaint, and insisting that the plaintiffs do not hold a perfected security interest in this truck good against the trustee in bankruptcy, since the trustee asserts that the plaintiffs never showed their security interest in the truck on any certificate of title.

### THE ISSUE

The issue here is whether the plaintiffs hold any kind of security interest which will come ahead of the interest of the trustee in bankruptcy.

The plaintiffs insist that they have a security interest in the truck, and that though their interest may not be properly perfected by an appearance of the name of the plaintiffs on a certificate of title, that plaintiffs are, by virtue of subrogation, entitled to claim the valid and perfected security interest of General Motors Acceptance Corporation, which corporation held a first lien upon the truck.

The subsidiary issue, then, is whether or not the plaintiffs are entitled to any rights by virtue of subrogation to the vehicle or its proceeds.

### FINDINGS

1. In 1979, General Motors Acceptance Corporation had a valid and perfected security interest in a 1977 Chevrolet C–60 truck, owned by the debtor, James E. Farris. It was properly perfected by a notation on the certificate of title.

2. On December 3, 1979, $3,500 was paid by Brantley Gin Company to GMAC, and on April 3, 1982, $1,575 was paid to GMAC by the Brantley Gin Company.

3. Exhibit B to the affidavit filed by plaintiffs signed by W.D. Bailey shows that check number 82292, drawn on the Brant-

ley Gin Company, in the amount of $1,575 was "for truck payment for James Farris." No such notation appears on the $3,500 check dated December 3, 1979.

4. On March 11, 1982, the debtor executed a note and security agreement for $246,562.75. It was secured by crops on several farms, and by an equipment list, which included the 1977 Chevrolet 1½ Ton truck..

This vehicle was also included in the equipment list attached to the UCC-1 financing statement filed on March 29, 1982, by Brantley Gin Company.

5. The affidavit of W.D. Bailey recites:

4. All payments were made with the understanding between Brantley Gin Company and James E. Farris, a second lien would attach to the 1977 Chevrolet C-60 dump truck, VIN CCE617V130691 by making advance payments as set forth in Exhibits A and B attached hereto . . . .

6. The trustee sold the truck to Black and Botts Oil Company, and paid the balance of the amount owing to GMAC of $804.41, out of the sales proceeds, and retains the balance in his account.

7. The plaintiffs did not have their name on the certificate of title as a subsequent or junior lien holder.

8. There has been no formal assignment by GMAC to plaintiffs of any interest in the truck, or in the note and security agreement.

### CONCLUSIONS

1. The plaintiffs do not hold a perfected security interest in the 1977 C-60 truck by virtue of the note and security agreement dated March 11, 1982. They did not have their status as lien holder recorded on the certificate of title.

2. Plaintiffs did not at the time they issued the check for $3,500 on December 3, 1979, have any security interest of

any kind in the truck. They did not acquire any interest in the truck by the issuance of that check. Alabama Code, Section 7-9-203 is a statute of frauds, which prevents the attachment of a security interest unless the creditor has possession of the security property, or has a valid written security agreement covering that collateral security. Here, there was no such agreement; there is no evidence of possession by the plaintiffs at the time the check issued or thereafter.

3. As to the check issued on April 3, 1982, for $1,575, that check specifically recites that it was for a truck payment for James Farris. At that time a valid security agreement to Brantley Gin Company covered this truck.

4. That security agreement, since it is not perfected by an appropriate certificate of title, is void against the trustee asserting his rights to this truck under Title 11, U.S. Code, Section 544(a).

5. Plaintiffs insist though that they are entitled to be subrogated to the rights of GMAC in its valid and perfected security interest which was a first lien upon the truck. To the extent that Brantley Gin Company had anything to protect at the time it issued either of these checks, the doctrine of subrogation may be available.[1]

6. Brantley Gin had no interest in the truck or relationship with James Farris at the time of the issuance of the $3,500 check on December 3, 1979, which would give Brantley Gin any subrogation rights. There was no security agreement; there was no interest in the truck to protect. There was no contractual obligation or even a moral obligation on the part of Brantley Gin Company to pay the debt owed by James Farris to GMAC. Brantley Gin Company was, in effect, a volunteer only.

7. The situation is different on April 3, 1982, when the second check issued. The month before that, Brantley Gin

---

1. See Alabama Code, Section 7-1-103. This subrogation is not the conventional subrogation referred to in Title 11, United States Code, Section 509.

Company had acquired an interest in the truck, and had made a direct payment to GMAC, the first lien holder, to protect its interest in that truck. Such an interest or relationship, regardless of its extent or quality, gives Brantley Gin something to protect. The discharge of debtor's obligation owed to GMAC, then, to protect such an interest, may entitle the payor to be subrogated to the rights of the Creditor GMAC. Although the general principle has not been applied to a situation like the one in this case, in any Alabama case which we can find, it is a general principle of Alabama law of wide application. See *Industrial Development Board of the Town of Section, Ala. v. Fuqua Industries, Inc., et al,* (5th Cir.1975) 523 F.2d 1226; Cf. *Continental Casualty Co. et al v. Canadian Universal Insurance Co.,* (5th Cir.1979) 605 F.2d 1340. (Louisiana and admiralty law.)

8. Since the debt to GMAC has now been paid in full (even though not by Brantley Gin) the conditions for subrogation are met, and no equities having intervened, other than trustee's, whose rights arose subsequent to the $1,575 payment, then subrogation ought to follow.

9. An appropriate order will enter.