In re David A. PERKS, Debtor.

James R. WARREN, Trustee, Plaintiff,

v.

SOCIETY CORPORATION, Donald G. Perks, Sr., Onie Perks, Defendants.

Bankruptcy No. 3–90–03028.
Adv. No. 3–90–0248.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 31, 1991.

James R. Warren, Springfield, Ohio, for plaintiff.

Ira H. Thomsen, Kettering, Ohio, for defendant.

CORRECTED DECISION ON ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING TRUSTEE'S COMPLAINT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences.

This proceeding is presently before the court on the parties' cross-motions for summary judgment (Docs. 20, 29). The parties request that summary judgment be entered upon the issue of whether payments made to the defendant, Society Corporation (Society), by the debtor, David A. Perks (Debtor), and his parents, Donald and Onie Perks, within one year of the date the Debtor filed his bankruptcy petition, are avoidable by the plaintiff (Trustee) as preferences under 11 U.S.C. § 547(b). Society asserts that these payments are not avoidable as preferences pursuant to 11 U.S.C. § 547(c)(2) and 11 U.S.C. § 547(c)(7).

## FACTS

The pleadings, including the parties' Stipulations Of Fact (Doc. 27, attachment) and affidavits (Docs. 21, 22, and 27 (attachments)), establish the following relevant facts:

1) On or about November 16, 1988, the Debtor purchased a 1988 Ford Thunderbird (Thunderbird) with the proceeds of a loan (Loan) from Society. The amount financed by the Debtor was $19,021.74 (Doc. 27, JE1).

2) The Debtor's parents, Onie and Donald Perks, cosigned the Debtor's Loan.

3) This Loan was secured by notation of a lien on the certificate of title to the Thunderbird which was issued in the Debtor's name.

4) The Loan was made by Society in accordance with ordinary business terms. Society makes automobile loans in the ordinary course of its business.

5) Prior to the purchase of this Thunderbird, the Debtor had purchased and financed three or four other automobiles.

6) The Thunderbird was used by the Debtor for his own personal use. The Debtor had actual and exclusive possession and use of the Thunderbird from the date the Loan was executed until July 3, 1990, the date of repossession.

7) The Debtor filed for relief under chapter 7 of the Bankruptcy Code on July 6, 1990. On this date and within the preceding year, the Debtor's liabilities exceeded his assets (Doc. 22).

8) On the date the Debtor filed his bankruptcy petition Society was an undersecured creditor.

9) The Debtor's parents are insiders pursuant to 11 U.S.C. § 101(31)(A)(i).

10) The Trustee may recover payments made within the one year preference period if these payments benefited insider creditors or guarantors. 11 U.S.C. § 547(b)(4)(B).

11) Within one year before the date the Debtor filed for bankruptcy, $3,965.07 was paid to Society on the Loan. During the course of the Loan, the Debtor made a total of fifteen payments to Society each in the amount of $428.51. Prior to the one year preference period, the Debtor made

seven payments on the Loan ranging from nine to twenty days late. During the one year preference period, the Debtor made eight payments on the Loan ranging from ten to twenty days late. The Debtor's parents made one payment on the Debtor's Loan in the amount of $506.99. This payment was made with funds belonging to the Debtor's parents. This payment, made forty days late, was the last received by Society on the Debtor's loan and is identified on the loan reconstruction document submitted by Society as it is the only payment made in this exact amount.

12) Society assessed late charges against the Debtor in accordance with the terms of the Loan in the ordinary course of its business. The Loan note and security agreement (Doc. 27, JE1) provides that the borrower "agree to pay a late charge of 10% of the payment, but not more than $30 for each late payment." Prior to the one year preference period, four late charges were assessed by Society against the Debtor and only two late charges, each in the amount of thirty dollars, were paid. During the one year preference period, eleven late charges were assessed against the Debtor and only one thirty dollar late charge was paid.

13) With the exception of the repossession and sale of the Thunderbird, Society did not engage in any collection activity with respect to the Loan.

14) On November 15, 1990, the Trustee made a formal demand requesting that Society make payment of the alleged transfer. Society did not remit any portion of this amount to the Trustee.

15) On November 28, 1990, the Trustee commenced this adversary proceeding.

16) The Trustee filed a Motion For Summary Judgment By Trustee in Bankruptcy (Doc. 20), Affidavit Of James R. Warren, Trustee In Bankruptcy In Support Of The Motion For Summary Judgment By Plaintiff, James R. Warren, Trustee In Bankruptcy (Doc. 21), Affidavit Of David A. Perks, In Support Of Motion For Summary Judgment, By Plaintiff, James R. Warren, Trustee In Bankruptcy (Doc. 22), Memorandum Of Trustee In Bankruptcy Re Motion For Summary Judgment (Doc. 28), and Memorandum Of Trustee In Bankruptcy In Opposition To Motion For Summary Judgment By Defendant Society Corporation (Doc. 30). Society filed a Notice Of Submission (Doc. 27) with stipulations and various affidavits and exhibits attached, and a Motion For Summary Judgment Of Defendant Society (Society Bank, NA) and Memorandum In Support Thereof And In Opposition To Plaintiff's Motion For Summary Judgment (Doc. 29).

## DISCUSSION

Summary judgment is governed by Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) in relevant part, provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by substantive law. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Additionally and more importantly, a dispute over a material fact must be genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the non-

moving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significantly probative ... summary judgment is appropriate.

*Id.* 106 S.Ct. at 2511 (citations omitted). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"; for example, "whether a jury [fact finder] could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* at 2513 (emphasis in original). *See generally Carl Subler Trucking, Inc. v. Kingsville–Ninety Auto/Truck Stop, Inc. (In re Carl Subler Trucking, Inc.),* 122 B.R. 318, 320–21 (Bankr.S.D.Ohio 1990); *Talbot v. Warner (Matter of Warner),* 65 B.R. 512, 515–18 (Bankr.S.D.Ohio 1986). No genuine issue of material fact exists; thus, this proceeding is appropriate for summary judgment.

■ The Trustee asserts that the payments made to Society in the amount of $3,965.07 constitute an avoidable preference. To be a preference, a transfer must satisfy all the requirements of 11 U.S.C. § 547(b). Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee bears the burden of proving that the payments made to Society are avoidable as preferences under section 547(b). 11 U.S.C. § 547(g).

■ Although Society received a payment from the Debtor's parents within 90 days before the date the Debtor filed for bankruptcy, this payment is not avoidable by the Trustee. A transfer to a creditor can only be avoided under 11 U.S.C. § 547(b) if it was made with property belonging to the debtor. The payments made by the Debtor's parents with funds belonging to them are not avoidable as preferences. Thus, the Trustee cannot recover the payment made to Society in the amount of $506.99.

■ The Debtor did not make any payments to Society within the ninety day preference period; however, the Trustee may recover avoidable payments from non-insiders made during the extended preference period of one year when these payments benefited insider creditors or guarantors. *See Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.),* 899 F.2d 1490 (6th Cir.1990). The Debtor's parents are insiders and they benefited by the payments made to Society.

■ Excluding the payment made by the Debtor's parents, this court concludes, based upon the pleadings, including the parties' affidavits and stipulations, that the elements of § 547(b) are satisfied and the transfers made to Society are preferences. However, preferences may not be avoided by a trustee if any of the affirmative defenses of § 547(c) are met. The party asserting a defense under 11 U.S.C. § 547(c) bears the burden of proving that a transfer is not avoidable. 11 U.S.C. § 547(g).

Society asserts that the payments it received from the Debtor within one year of the date the Debtor filed for bankruptcy are not avoidable as preferences under § 547(c)(2) and § 547(c)(7). Pursuant to

§ 547(c)(2), a trustee may not avoid transfers

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

The Bankruptcy Code does not define "ordinary course of business" or "ordinary business terms." *Sprowl v. Miami Valley Broadcasting Corp. (In re Federated Marketing, Inc.)*, 123 B.R. 265, 269 (Bankr. S.D.Ohio 1991) (quoting *Waldschmidt v. Ranier (In re Fulghum Const. Corp.)*, 872 F.2d 739 (6th Cir.1989)). Further, no precise legal standards can be utilized for determining whether a payment was made in the "ordinary course"; rather, a court must engage in a "peculiarly factual" analysis of "the business practices unique to the particular parties." *Gosch v. Burns (In re Finn)*, 909 F.2d 903, 907 (6th Cir. 1990) (quoting *In re Fulghum* at 743). *Accord Federated Marketing* at 269.

The Trustee asserts that, considering the length of the Loan and its large amount it was not incurred in the "ordinary course," and that considering the Debtor's financial condition it was not "ordinary" to incur a debt of this magnitude. Further, the Trustee asserts that because the Debtor habitually made late payments and because Society assessed late charges, the payments were not made "according to ordinary business terms."

The Supreme Court in *Union Bank v. Wolas*, — U.S. —, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991), addressing the issue of whether long-term debt may come within the ordinary course exception of § 547(c)(2), concluded that payments on long-term debt may qualify for the ordinary course of business exception to the trustee's power to avoid preferential transfers. This is the same conclusion reached by the Sixth Circuit decision of *Finn*. In *Finn* the court held:

Long-term debt is as amenable to the exception of § 547(c)(2) as is any other type of debt, so long as the facts of the situation bring it within the "ordinary course of business or financial affairs" language.

The legislative history does state that "[t]he purpose of this exception is to leave undisturbed normal financial relations." H.R.Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6329. This language focuses on the "normalcy" of the relations, and is buttressed by the next phrase of the report, stating that the exception "does not detract from the general policy of the preference section to discourage *unusual* action by either the debtor or his creditors during the debtor's slide into bankruptcy."

*Finn* at 906–07 (citation omitted).

In determining whether a transaction was made in the "ordinary course," analysis must consist of an examination of several factors including the "amount, manner, and timing of the transaction and the circumstances under which the transfer was made." *Federated Marketing* at 270. Courts have determined that the following constitute transfers that are not ordinary: untimely payments, payments made in an unusual form, payments made in an unusual amount, and payments made for transactions that are unusual as between the parties. *Federated Marketing* at 270 (quoting *Warren v. Huntington Nat'l Bank (Matter of Ullman)*, 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987)). However, the critical inquiry in determining whether a transfer is "ordinary" is whether the transfer is "consistent with the course of dealings between the particular parties." *Finn* at 907.

▮ Applying the provisions of § 547(c)(2) and the foregoing authority, this court concludes that the debt existing between the Debtor and Society is one which is typically "incurred" in the ordinary course of business or financial affairs of the Debtor and Society. The parties stipulated that making automobile loans was in the "ordinary course of business" of Socie-

**632**

ty and that the Debtor, prior to the inception of this Loan, financed three or four other automobiles. In addition, the Loan documents demonstrate that the Loan, including the provisions providing for late charges, was made "according to ordinary business terms."

The payments were not made in an unusual form, nor were they made in an unusual amount, nor were the payments unusual as between the parties. Thus, this court must determine whether the payments, including the late charge payments, were untimely, i.e. not in the "ordinary course" of financial affairs of the Debtor and Society.

■ The Debtor's Loan with Society was a consumer loan. The Debtor made every payment due on the Loan; however, no payment was made on the first date it was due pursuant to the parties' contract. The court notes that the parties' contract recognized that, if any payment was not paid within ten (10) days from the date it was due, a late charge could be added to any other amount due pursuant to the contract (Doc. 27, JE1).

Throughout the history of the Loan, the Debtor made late payments on a consistent basis to Society. Prior to the one year preference period, the Debtor made seven payments on the Loan ranging from nine to twenty days late. During the one year preference period, the Debtor made eight payments on the Loan ranging from ten to twenty days late. A comparison of the Debtor's payment history prior to the one year preference period with the debtor's payment history during the one year preference period demonstrates a regular pattern of delinquent payment by the Debtor to Society.

With respect to the late charge made by the Debtor, the court notes that prior to the one year preference period, Society assessed four late charges against the Debtor and two of these late charges were paid by the Debtor. During the one year preference period Society assessed eleven late charges against the Debtor and one of these late charges was paid by the Debtor. The Debtor's payment of the late charges

during the one year preference period is consistent with his prior history of payments of late charges. The fact that the debtor consistently made payments later than the date they were first due pursuant to the parties' contract, standing alone, is not a sufficient basis to conclude the payments were "untimely".

Based upon the foregoing "peculiarly factual" analysis of "the business practices unique to these particular parties", this court concludes that the Debtor's payments to Society during the one year preference period were consistent with the entire course of dealings between the parties and thus "ordinary." Therefore, pursuant to § 547(c)(2), the payments made by the Debtor to Society are not avoidable by the Trustee.

Having determined that the payments made to Society are not avoidable under § 547(c)(2), it is unnecessary to address Society's assertions under § 547(c)(7).

Accordingly, the motion for summary judgment (Doc. 20) filed by the plaintiff, James R. Warren, Trustee, is DENIED. The motion for summary judgment (Doc. 29) filed by the defendant, Society Corporation, is GRANTED. The trustee's complaint (Doc. 1) is DISMISSED.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.