**In re Ricky Wayne MASTERS, dba Masters Sign Service, Debtor.**

**John Paul RIESER, Trustee, Plaintiff,**

v.

**The RANDOLPH COUNTY BANK, Nesco–Nationwide Equipment Sales Company, Defendants.**

Bankruptcy No. 3–90–02686.
Adv. No. 3–91–0078.

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 2, 1992.

John Paul Rieser, Dayton, Ohio, for plaintiff.

Stephen D. Miles, Dayton, Ohio, for defendants.

## DECISION ON ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences.

This proceeding is presently before the court on the parties' cross-motions for summary judgment (Docs. 24–1, 25–1). The plaintiff, John Paul Rieser, Trustee (Trustee), requests that this court enter summary judgment in his favor on several issues including whether transfers made postpetition by Ricky Wayne Masters (the Debtor) are recoverable by the Trustee under 11 U.S.C. § 549 and whether transfers made to the Defendant, The Randolph County Bank (the Bank), are preferences under 11 U.S.C. § 547. Further, the Trustee requests that he be awarded costs and prejudgment interest on these transfers. In addition, the Trustee requests a determination that he possesses superior lien rights in a truck and various equipment on the truck held by the Bank as collateral.

The Bank and the defendant, NESCO (collectively the Defendants), have filed a motion for summary judgment requesting that the court enter summary judgment in their favor with respect to the issue of who possesses superior lien rights in the truck.

## I. FACTS

The pleadings, including the Agreed Joint Statement Of Facts And Joint Exhibits (Doc. 18–1), establish the following relevant facts:

1) On or about February 20, 1990, a ladder truck (Truck) was delivered to the Debtor by NESCO, a licensed motor vehicle dealer and broker of equipment such as the Truck, for a total purchase price of $23,000. The Debtor made an $8,000 downpayment on the Truck. The balance of $15,000 was financed through a retail installment contract and security agreement (the Loan) taken out with the Bank. In the security agreement, the Bank listed several items in which it took a purchase money security interest including a "1980 85' Radocy S/N C77 on a 1980 Mercedes Model BL111651, S/N 3760245248065, ladders, welder miller 260, welding leads, step bumper, 18″ steel flat bed, lamp box, 2 tools on bed, and 4 underslung boxes." The terms of the Loan provided that payment, in the amount of $719.81, was due beginning on March 20, 1990 and on the twentieth day of each following month until February 20, 1992.

2) NESCO guarantied the obligation of the Debtor to the Bank.

3) The Debtor utilized the Truck in his business to install signs.

4) The Truck is registered, without any liens, in the State of Alabama and is titled to the prior owner from whom NESCO

acquired the Truck for transfer to the Debtor. NESCO signed the back of the Truck title as an assignment of the Alabama title to the Debtor and noted the lien to the Bank.

5) The Debtor never registered the Truck in Ohio (Doc. 24–1).

6) On June 15, 1990, the Debtor filed for relief under chapter 7 of the Bankruptcy Code.

7) The Debtor listed several items of personal property on his bankruptcy petition including the 1980 85' Radocy (Truck) S/N C77 on a 1980 Mercedes Model BL111651, S/N 3760245248065, ladders, welder miller 260, welding leads, step bumper, 18″ steel flat bed, lamp box, 2 tools on bed, and 4 underslung boxes (collectively the Equipment) which are all part of the Truck or loaded on the Truck.

8) The Bank is a prepetition creditor of the Debtor and has filed a proof of claim against the estate.

9) Within ninety days before the date the Debtor filed his bankruptcy petition, the Debtor transferred to or for the benefit of the Bank the sum of $2,172.43. This sum is the total of the following payments (Prepetition Payments):

| Date | Amount | Check Number |
|------|--------|--------------|
| March 20, 1990 | $719.81 | 2788 |
| April 20, 1990 | $719.81 | 211 |
| June 1, 1990 | $732.81 | 375 |

10) The Prepetition Payments were made for or on account of an antecedent debt owed by the Debtor to the Bank before these transfers were made.

11) The Prepetition Transfers were made while the Debtor was insolvent.

12) The unsecured creditors will receive, upon distribution in this case, less than one hundred percent of their claims.

13) Postpetition, the Debtor transferred to or for the benefit of the Bank monies, constituting property of the estate, that were not authorized by the court or otherwise authorized under the provisions of Title 11 of the United States Code. These transfers include a payment made on July 2, 1990, in the amount of $720.00, and payments totalling $1,465.62, made on or about August 20, 1990, for a total of $2,185.62.

14) On May 8, 1991, the Trustee filed this adversary proceeding.

15) The Defendants filed, jointly, a Motion For Summary Judgment By Defendants, The Randolph County Bank, and NESCO (Doc. 24–1). The Trustee filed a Motion For Summary Judgment Of Plaintiff, John Paul Rieser, Trustee (Doc. 25–1). In response to the Trustee's motion, NESCO filed a Memorandum Of NESCO—(Nationwide Equipment Sales Co.) In Opposition To Plaintiff's Motion For Summary Judgment (Doc. 26–1).

## II. DISCUSSION

Summary judgment is governed by Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. Rule 7056(c), in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by substantive

law. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Additionally and more importantly, a dispute over a material fact must be genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significantly probative ... summary judgment is appropriate.

*Id.* 106 S.Ct. at 2511 (citations omitted). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"; for example, "whether a jury [fact finder] could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* at 2513 (emphasis in original). *See generally Carl Subler Trucking, Inc. v. Kingsville–Ninety Auto/ Truck Stop, Inc. (In re Carl Subler Trucking, Inc.),* 122 B.R. 318, 320–21 (Bankr.S.D.Ohio 1990); *Talbot v. Warner (In re Warner),* 65 B.R. 512, 515–18 (Bankr.S.D.Ohio 1986). No genuine issue of material fact exists; thus, this proceeding is appropriate for summary judgment.

### A. 11 U.S.C. § 549

The Trustee asserts that he is entitled to recover all of the postpetition transfers made to the Bank, totalling $2,185.62. Section 549, in relevant part, provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
>> (1) that occurs after the commencement of the case; and

>> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>>
>> (B) that is not authorized under this title or by the court.

■ Therefore, pursuant to Section 549, postpetition transfers of estate property that are not authorized by the court are voidable by a trustee. *See ·e.g., Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 465 (6th Cir.1991); *In re Bartley Lindsay Co.,* 120 B.R. 507, 513 (Bankr.D.Minn.1990); *Rafoth v. Smith & Schmidt Assocs., Inc. (In re Swedenborg),* 55 B.R. 820, 823 (Bankr.N.D.Ohio 1985).

■ The parties stipulated that, postpetition, the Debtor transferred to or for the benefit of the Bank monies, constituting property of the estate, which were not authorized by the court or otherwise authorized under the provisions of Title 11 of the United States Code. These payments include a payment made on July 2, 1990, in the amount of $720.00, and payments made on or about August 20, 1990, in the amount of $1,465.62, for a sum total of $2,185.62. Therefore, pursuant to Section 549, the Trustee is entitled to recover $2,185.62.

### B. Determination With Respect To Who Possesses Superior Lien Rights In The Truck

The Trustee seeks a declaratory judgment with respect to the issue of who, as between the Trustee and the Defendants, has a superior lien interest in the Truck and the Equipment. The Trustee asserts that, as a result of his status as a hypothetical lien creditor under 11 U.S.C. § 544, his interest is superior to the Bank who merely has an unperfected security interest. The Defendants assert that, under Ohio certificate of motor vehicle title law, Masters did not "have any right, title, claim or interest in the motor vehicle when he filed his petition. He only had the ability to use the motor vehicle, and the duty to pay in accordance with the underlying note." Therefore, the Defendants argue that the

Trustee cannot obtain any rights to the Truck pursuant to 11 U.S.C. § 544.[1]

Initially, this court must determine whether the Truck and the Equipment constitute property of the Debtor's bankruptcy estate under 11 U.S.C. § 541(a). Section 541(a) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" constitute property of the estate. Section 541 "was intended to be broad in scope." *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir.1991), *cert. denied*, — U.S. —, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983)).

■ Title to a motor vehicle is only *prima facie* evidence of ownership. *See Rutledge v. Toyota Motor Credit (In re Rutledge)*, 115 B.R. 344, 346 (Bankr. N.D.Ala.1990), *aff'd*, 121 B.R. 609 (N.D.Ala.1990). Sufficient facts, such as possession, may exist to establish, at a minimum, an equitable interest. *See e.g. First Nat'l Bank of Denver v. Turley*, 705 F.2d 1024, 1026 (8th Cir.1983); *In re Bierman*, 133 B.R. 484, 487 (Bankr.N.D.Ia. 1991); *In re Rutledge*, 115 B.R. at 346; *In re DesChamps*, 79 B.R. 62, 63–64 (Bankr. M.D.Fla.1987).

■ In this proceeding, facts exist which establish that the Debtor possesses at least an equitable interest in the Truck and the Equipment. The Debtor made a downpayment of $8,000, obtained financing on the Truck and Equipment, made monthly payments, and had possession and use of the Truck and the Equipment for his business. Accordingly, the Truck and the Equipment constitute property of the estate under 11 U.S.C. § 541.

Having determined that the Truck and the Equipment constitute property of the estate, the issue becomes whether the Trustee or the Defendants possess a superior lien interest in the Truck and the Equipment.

■ Under 11 U.S.C. § 544, a trustee, on the date a debtor files a bankruptcy petition, possesses the status of a hypothetical lien creditor. Therefore, to defeat the trustee's status, a creditor must possess a perfected security interest on the date the debtor filed a bankruptcy petition. *First Eastern Bank, N.A. v. Minichello (In re Minichello)*, 120 B.R. 17, 20 (Bankr. M.D.Pa.1990); *Bailey v. Farris (In re Farris)*, 40 B.R. 58, 60 (Bankr.M.D.Ala.1984); *Feldman v. Schreiber (In re Finkle)*, 38 B.R. 101, 102 (Bankr.D.Md.1984); *Bezanson v. Indian Head Bank & Trust Co. (In re Howell)*, 28 B.R. 273, 275–76 (Bankr. D.Maine 1983). The determination of whether a party has perfected its security interest is governed by state law. *Maloney v. American Nat'l Bank (In re Terkeltaub)*, 117 B.R. 47, 49 (Bankr.D.Conn.1990).

The Bank asserts, without providing any supporting documentation, that it has a superior interest in the Truck. With respect to the Truck, the Bank states that the Debtor never registered the Truck in Ohio,[2] and the parties stipulated that the Truck was registered in Alabama, without any liens, and remains titled to the prior owner from whom NESCO acquired the Truck for transfer to the Debtor. NESCO merely signed the back of the title to the Truck as an assignment of the Alabama title to the Debtor and noted the Bank as lienholder in the space provided.

■ Under the relevant state law, the law of Alabama, the court must determine

---

**1.** The Defendants have not made any distinction between the Truck and the Equipment; however, the Trustee refers to the Truck and the Equipment as separate collateral. Consequently, this court will refer to the property separately and will not address any issues pertaining to accession. *See e.g. Ledford v. Rikes (In re Fields)*, 56 B.R. 149, 152–53 (Bankr.S.D.Ohio 1985).

**2.** In Ohio, the perfection of motor vehicles is governed by Ohio Revised Code § 4505.13. *See In re Fields*, 56 B.R. at 151–52. Ohio Revised Code § 4505.13 states that, to be perfected, a notation of a security interest must be made on the certificate of title by the clerk of common pleas of the county in which the owner of the vehicle resided at the time the application for the certificate was made. Therefore, pursuant to Ohio law, the Bank was not perfected in the Truck.

whether the Bank's security interest is perfected. In Alabama, under Ala.Code § 32–8–61(b),

> A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 20 days thereafter, otherwise, as of the time of the delivery.

The title to the Truck was not delivered by the Debtor to the department in Alabama and the notation of the Bank as a lienholder on the back of the Truck's certificate of title is not sufficient to create perfection. Therefore, on the date the Debtor filed bankruptcy, the Bank merely held an unperfected security interest in the Truck.

█ With respect to the Bank's claim as a creditor with a perfected security interest in the Equipment, again, the court notes that the Bank did not provide any documentation, nor did the Bank make any assertions which could demonstrate that it perfected its security interest in the Equipment. The Trustee stated that no UCC financing statement was filed and the Bank did not produce one. The Debtor, and not the Bank, had possession of the Equipment; and, because the Equipment does not constitute consumer goods perfection without a filing cannot be recognized. The court concludes that the Bank did not perfect a security interest in the Equipment.

Accordingly, pursuant to 11 U.S.C. § 544, the Trustee, as a perfected lien creditor, possesses a lien interest superior to NESCO and superior to the unperfected security interest of the Bank.

## C.  11 U.S.C. § 547

█ Trustee asserts that the payments made to the Bank within ninety days before the Debtor filed his bankruptcy petition constitute avoidable preferences. To

be a preference, a transfer must satisfy all the requirements of 11 U.S.C. § 547(b). Section 547(b) provides:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee bears the burden of proving that the transfers satisfy each element under Section 547(b). 11 U.S.C. § 547(g).

█ Based upon the parties' stipulations establishing the findings of fact (paras. 8, 9, 10, 11, 12), and the determination that the Defendants' interest in the Truck and the Equipment is unsecured, the court concludes that each of the elements of § 547(b) have been satisfied. Therefore, the payments made to the Bank are avoidable as preferences.

█ However, preference payments may be excepted from avoidance if any of the affirmative defenses set forth in 11 U.S.C. § 547(c) are established. NESCO asserts that the payments made to the Bank are not avoidable as preferences pursuant to 11 U.S.C. § 547(c)(2).[3] Section

**3.** This court notes that counsel for the Defendants more than likely intended to file a response asserting the § 547(c)(2) defense on behalf of the Bank instead of NESCO. However,

547(c)(2) provides that a trustee may not avoid transfers

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

Under 11 U.S.C. § 547(g), a party asserting a defense under 11 U.S.C. § 547(c) bears the burden of proof and must establish the defense by a preponderance of the evidence. *Warren v. Huntington Nat'l Bank (In re Ullman)*, 80 B.R. 101, 102 (Bankr.S.D.Ohio 1987).

■■ With respect to the first element under § 547(c)(2), subsection (A), this court concludes that the payments made to the Bank were payments of a debt typically "incurred" in the ordinary course of business or financial affairs of the Debtor and the Bank. The Bank is a financial institution which typically engages in lending money, and the Debtor utilized the Truck in his business of installing signs.

The phrases, "ordinary course of business" or "ordinary business terms," as utilized under § 547(c)(2)(B) and § 547(c)(2)(C), are not defined in the Bankruptcy Code. *Sprowl v. Miami Valley Broadcasting Corp. (In re Federated Marketing, Inc.)*, 123 B.R. 265, 269 (Bankr.S.D.Ohio 1991) (quoting *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir.1989)). Further, no precise legal standards exist in making this determination; rather, a court must engage in a "peculiarly factual" analysis of the "the business practices ... unique to the particular parties...." *Gosch v. Burns (In re Finn)*, 909 F.2d 903, 907 (6th Cir.1990) (quoting *Fulghum*, 872 F.2d at 743). *Accord Warren v. Society Corp. (In re Perks)*, 134 B.R. 627, 631 (Bankr.S.D.Ohio

1991); *Federated Marketing*, 123 B.R. at 269. Further, as the Sixth Circuit noted in *Fulghum*, "[c]onsideration of the practices of the parties might not conclude the § 547(c)(2) analysis; industry practice might be relevant to the § 547(c)(2)(C) element of 'ordinary business terms.'" *Fulghum*, 872 F.2d at 743 n. 5.

When engaging in this "peculiarly factual" analysis to determine whether a transaction was made in the "ordinary course," the court must examine several factors including the "amount, manner, and timing of the transaction and the circumstances under which the transfer was made." *Federated Marketing*, 123 B.R. at 270. Courts have determined that the following constitute transfers that are not ordinary: untimely payments, payments made in an unusual form, payments made in an unusual amount, and payments made for transactions that are unusual as between the parties. *Federated Marketing*, 123 B.R. at 270 (quoting *In re Ullman*, 80 B.R. at 103). However, the most crucial inquiry in determining whether a transfer is "ordinary" is a determination of whether the transfer is "consistent with the course of dealings between the particular parties." *Finn*, 909 F.2d at 907; *In re Perks*, 134 B.R. at 631.

The Debtor signed the Loan with the Bank on February 20, 1990. The first payment under the Loan was due on March 20, 1990, within the ninety day preference period; therefore, no payment history prior to the preference period exists to aid in the determination of whether the preference payments were unusual in any aspect with regard to the parties' prior course of dealings or practices. The court merely has the Debtor's short payment history, which occurred during the preference period, to determine whether the transfers to the Bank were "ordinary."

■■ A total of only three payments were made on the Loan to the Bank. The first two payments were made in accordance with the terms of the Loan. Each payment was made in the amount of

---

counsel's position will not adversely affect this court's analysis under § 547(c)(2) with respect

to the transfers made to the Bank.

$719.81, the proper amount owed, and each payment was posted as paid on the twentieth day of the month, the date it was due. Thus, there was nothing unusual about the timing, manner, or amount of the payments. Accordingly, these two payments were made in the ordinary course of business between the Debtor and the Bank.

■ However, unlike the first two payments made to the Bank, the last payment made by the Debtor to the Bank, in the amount of $732.81, was not paid in accordance with the terms of the Loan, and was paid over one month late and included a late charge. This payment was not made in the ordinary course of business between the Debtor.

■ With respect to subsection (C) of § 547(c)(2), this court finds that the terms of the Loan are in conformity with industry practice. Furthermore, neither evidence nor assertions to the contrary were presented to the court.

Accordingly, the two payments made to the Bank, each in the amount of $719.81, are excepted from avoidance by the Trustee under § 547(c)(2); however, the payment made to the Bank, in the amount of $732.81, is avoidable by the Trustee.

### D. Prejudgment Interest And Costs

The Trustee requests that he be awarded prejudgment interest on the preference payments from the date of the filing of this adversary proceeding and that he be awarded prejudgment interest on the postpetition transfers from the date they were made. Additionally, the Trustee seeks costs, including the "filing fee and any other permissible fees."

This court, in *Foreman Indus., Inc. v. Broadway Sand & Gravel (In re Foreman Indus., Inc.)*, 59 B.R. 145, 156–57 (Bankr. S.D.Ohio 1986), held that prejudgment interest, at the rate set forth in 28 U.S.C. § 1961(a), may be awarded on the recovery of preference payments from the earlier of the initial request for turnover or from the filing date of the complaint. *Accord In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d at 465; *In re Federated Market-*

*ing, Inc.*, 123 B.R. at 271. In *Foreman*, this court held that recovery of merely the original amount transferred to a creditor is not adequate, noting that a creditor not only would receive one hundred percent of the amount owed by the debtor, but would additionally have had total control and use of the property transferred, including the opportunity to invest the amount until any litigation concerning the transfer was concluded. At the same time, the debtor's estate would be deprived, not only of the property transferred to which it was rightfully entitled, but would also be deprived of the control and use of the property, particularly for investment purposes. In such a situation, all creditors and claimants of the estate would have had the amount they were entitled to receive diminished, not merely by the wrongful transfer of the funds, but also by the continued retention of those funds. The wrongful retention of funds can be redressed by an award of prejudgment interest. An award of prejudgment interest is compensatory, compensating the debtor's entire estate for the use of the funds for the period of time in which they were wrongfully withheld from the estate.

■ *Foreman* rationale is equally applicable to postpetition transfers which are recoverable under 11 U.S.C. § 549. Therefore, in an action to recover an unauthorized postpetition transfer made from property of the estate, a trustee is entitled to prejudgment interest, at the rate set forth in 28 U.S.C. § 1961(a), from the earlier of the initial demand for turnover or from the date the complaint was filed.

Accordingly, the motion for summary judgment (Doc. 24–1) filed by the defendants, The Randolph County Bank and NESCO–Nationwide Equipment Sales Company, is DENIED. The motion for summary judgment (Doc. 25–1) filed by the plaintiff, John Paul Rieser, Trustee, is DENIED IN PART, in that preferential payments made to The Randolph County Bank in the total amount of $1439.62 are not avoidable by the Trustee, AND GRANTED IN PART, in that:

1) the Trustee is entitled to recover the postpetition transfers made to The Randolph County Bank in the total amount of $2,185.62, plus interest, in accordance with 28 U.S.C. § 1961(a), from May 8, 1991,

2) the Trustee has a superior lien interest in the Truck and the Equipment and may sell or dispose of the same free and clear of any claimed interest of the defendants,

3) the Trustee may recover a preference made to The Randolph County Bank in the amount of $732.81, plus interest, in accordance with 28 U.S.C. § 1961(a), from May 8, 1991, and

4) the Trustee is entitled to recover from the defendants the filing fee for this action.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.